United States District Court
Southern District of Texas
**ENTERED**
June 29, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JORDAN MATTHEW CANDEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-21-2538 |
| | § | |
| MARCELO MALDONADO, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Jordan Matthew Candee is an inmate in the Brazos County Detention Center.  Representing himself and proceeding without prepayment of the filing fees, Candee filed a complaint and amended complaint under 42 U.S.C. § 1983 against the City of Bryan and Bryan Peace Officers Marcelo Maldonado and Billy Yoder.  (Docket Entry Nos. 1, 10).  This court previously dismissed Candee's claim against the City for failure to train and his claim against Yoder for intimidating a witness.  (Docket Entry No. 12).  The court ordered Maldonado and Yoder to respond to Candee's claims for excessive force, false arrest, and false imprisonment.  (Docket Entry No. 11).  The officers answered with a motion to dismiss or for summary judgment, (Docket Entry No. 27), and Candee has filed multiple responses.  (Docket Entry Nos. 31, 34, 37).  The court has carefully reviewed the pleadings; the motion and responses; the evidence, including the bodycam videos; and the applicable law.  Based on that review, the court grants the defendants' motion for summary judgment in part and dismisses this case for the reasons explained below.

I.      **Background**

On August 6, 2019, Candee and his friend Chelsea Boriskie were standing near her car in the parking lot of the University Inn near the A&M University campus.  (Docket Entry No. 27, p.

30).  The University Inn has a criminal trespass affidavit on file with the Bryan Police Department, which permits officers to stop anyone on the property and investigate their reason for being there. (*Id.* at 30, 35-36).  Officers Maldonado and Yoder were on patrol in the area.  (*Id.* at 30, 36).  They approached Candee and Boriskie, asked for identification, and asked about their reason for being on the property.  (*Id.*).  Maldonado and Yoder's body cameras recorded the events that happen next.  (Docket Entry No. 27, Exhs. 1, 2).

Candee told Yoder that his name was "Matt Barnes," and he gave a date of birth of March 19, 1989.  (Docket Entry No. 27, pp. 40, 44; Exh. 2 at 0:47-0:54).  Maldonado recognized Candee from a previous arrest and knew that his name was not "Matt Barnes."  (Docket Entry No. 27, pp. 40-41, 44, 62).  Maldonado decided to ask "Matt Barnes" additional questions because Maldonado suspected that Candee gave the false name to avoid pending arrest warrants.[1]  (*Id.* at 41, 44).

Maldonado ordered Candee to stand up and put his hands behind his back to be detained. Candee refused and asked, "For what?"  (Docket Entry No. 27, Exh. 1 at 5:38).  Maldonado told Candee that he was detained for giving a false name "Candee" during a criminal trespass investigation.  (*Id.* at 5:42-5:46).  Candee denied that his name was false, raising from his seated position on the curb as he did so.  (*Id.*).  Maldonado grabbed Candee's shirt to stop him, and Candee pushed Maldonado's right shoulder, trying to twist away from him and flee.  (*Id.* at 5:46-5:47).  Maldonado continued to hold Candee's shirt as Candee twisted, shoved, and kicked at Maldonado to try to escape his grasp.  (*Id.* at 5:47-5:57).  While difficult to see in the video, it appears that Maldonado hit and punched Candee in an effort to gain his compliance.  (*Id.*).  Yoder came over to assist Maldonado in gaining control of Candee.

---

[1]Maldonado later determined that the date of birth Candee gave was also false.

Yoder grabbed Candee from behind and helped Maldonado take him to the ground. (*Id.* at 5:57-5:59). When Candee continued to struggle and kick at the officers, Yoder put him in a chokehold to attempt to gain control. (*Id.* at 5:59-6:24). Even while in the chokehold, Candee continued to resist by flailing his arms and kicking both officers. (*Id.*). After a further struggle, Maldonado was able to grab Candee's left arm. (*Id.* at 6:15). Yoder released the chokehold and grabbed Candee's right arm. (*Id.* at 6:24-6:29). Candee braced his arms to try to avoid the handcuffs and also tried to get up. Yoder placed his knee between Candee's shoulder blades. (*Id.* at 6:31). The officers were then able to secure Candee in handcuffs. (*Id.* at 6:31-7:06). In all, the physical scuffle lasted less than three minutes.

Once Candee was secured, he told Maldonado that he remembered him from his previous arrest. (*Id.* at 8:08-8:17). When Candee complained that Maldonado had hit him in the face, Maldonado agreed that he hit Candee because Candee was resisting. (*Id.* at 7:15-7:18). Candee claimed that he hit Maldonado only after Maldonado hit him. (*Id.* at 8:22-8:31, 9:00-9:10).

Candee was arrested for possession of a controlled substance, resisting arrest, two counts of assault on a public servant, and providing fictitious information to law enforcement. (Docket Entry No. 27, p. 30). After Candee was arrested, law enforcement determined that he had two outstanding warrants out of Brazos County. (*Id.*).

In his § 1983 complaint and amended complaint, Candee alleges that Maldonado and Yoder used excessive force when detaining and arresting him. (Docket Entry No. 10, p. 6). He alleges that the use of the chokehold and the strike to his face during the arrest were unnecessary and resulted in a cut over his left eye that required stitches, damage to his eyesight, and injuries to his jaw. (Docket Entry No. 1, p. 7). Candee also alleges that Maldonado and Yoder arrested him without probable cause and lied under oath to bring false charges against him. (*Id.*). He seeks

money damages from Maldonado and Yoder to compensate him for the injuries he sustained during his arrest, as well as for mental anguish.  (Docket Entry Nos. 1, p. 7; 10, p. 5).

## II.    Legal Standards

### A.    Actions Under 42 U.S.C. § 1983

Candee brings his claims against the defendants under 42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights."  *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).  When the facts alleged by the plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed.  *See, e.g., Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 421 (5th Cir. 2006).

### B.    Summary Judgment

The defendants answered Candee's complaint with a motion for summary judgment.  "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)).  "In making that determination, a court must view the evidence 'in the light most favorable to the [nonmoving] party.'"  *Id.* at 657 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of

a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)).  "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

The court will generally "draw all inferences in the plaintiff's favor." *Dyer*, 964 F.3d at 380 (quoting *Taylor v. Stevens*, 946 F.3d 211, 217 (5th Cir. 2019)).  However, if record evidence clearly contradicts the plaintiff's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  This is particularly true when there is video evidence.  When video evidence exists, the court will "view[] the facts in the light depicted by the videotape." *Salazar v. Molina*, No. 20-40334, 2022 WL 2165984, at *1 (5th Cir. June 16, 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene."); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.").  The "court will not adopt facts that are clearly contradicted by the video." *Waddleton*, 750 F. App'x at 254 (citing *Scott*, 550 U.S. at 378).

### C.   *Pro Se* Pleadings

Candee is representing himself, so the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404

U.S. 519, 520 (1972) (per curiam).  But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)).  "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal."  *Id.* (footnotes omitted).

## III.    Analysis

### A.    Excessive Force Claims

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures, including those obtained through the use of excessive force.  *See* U.S. CONST. amend. IV; *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  When evaluating an excessive force claim in the context of an arrest, the court must pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Salazar*, 2022 WL 2165984, at *2 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The court must also consider the degree of force used because "the permissible degree of force depends on the *Graham* factors."  *Id.* (quoting *Cooper v. Brown*, 844 F.3d 517, 524-25 (5th Cir. 2016)).  In addition,

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .   The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97.  Candee alleges that Maldonado and Yoder used excessive force in

arresting him, but the record evidence raises no genuine factual dispute material to determining that the degree of force used was appropriate.

Candee's initial offense was providing a false name and date of birth to law enforcement. This offense is not severe and would authorize the use of only slight force at best. However, when Candee refused Maldonado's order to stand up and instead talked back to Maldonado, this added resistance supported the use of additional force. Once Candee began to push and struggle and try to pull away from Maldonado, that active resistance further supported the use of additional force. And when Candee began hitting and kicking Maldonado in an effort to avoid detention and flee, additional force was permissible. Candee's efforts to evade detention and arrest, including punching and kicking at Maldonado, posed an immediate threat to Maldonado's safety. When Yoder came to assist Maldonado, Candee's punches and kicks posed a threat to Yoder's safety as well. The video evidence shows that both officers used force that was proportionate to the severity of the offenses at the time it was used and both used only the force necessary to detain Candee while protecting the safety of the officers on the scene at the time. In short, the video evidence does not support Candee's claim that either officer used excessive force.

While Candee asserts that the opposite is true, he has not pointed to record evidence raising a genuine factual dispute material to determining whether the officers' use of force was excessive. Candee admits that he did not obey Maldonado's initial command to stand up. Candee alleges that Maldonado threw the first punch, but the video does not support his version of events. And while Candee asserts that the chokehold and strike to the face were unnecessary, Candee's escalating attempts to escape the officers' grasp belie this assertion. In determining whether the force used was excessive, "the relevant inquiry is whether the officer used a justifiable level of force in light of the continuing threat of harm that a reasonable officer could perceive." *Salazar*, 2022 WL

2165984, at *4.  And, in general, the use of increased force in response to both verbal and physical resistance is reasonable.  *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012).  The video evidence shows that Candee was actively resisting the officers by swinging his arms and kicking his legs, and the force they used was justifiable in light of the threat of harm they perceived at the time.

Because Candee points to no evidence showing that the force used was excessive under the circumstances, he has failed to carry his burden of proof.  Maldonado and Yoder are entitled to summary judgment in their favor on Candee's excessive force claim.

### B.    False Arrest Claims

Candee also alleges false arrest claims against Maldonado and Yoder.  Like excessive force claims, claims of false arrest are governed by the Fourth Amendment.  Whether an arrest is illegal under the Fourth Amendment, and therefore false, hinges on the absence of probable cause.  *See Baker,* 443 U.S. at 143-44; *Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir. 1998).  To prevail on his claim of false arrest, Candee must show that neither Maldonado nor Yoder had probable cause to arrest him.  *See Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . . require a showing of no probable cause.").

When determining the presence or absence of probable cause, courts consider the totality of the circumstances surrounding the arrest.  *See Ornelas v. United States,* 517 U.S. 690, 696-97 (1996).  The pertinent question is "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck*

*v. Ohio,* 379 U.S. 89, 91 (1964); *see also Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (per curiam); *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001).

The record shows that Maldonado had arrested Candee on narcotics charges less than a year before the August 2019 incident.  (Docket Entry No. 27, pp. 40-41, 44, 62).  Maldonado remembered Candee on sight and knew that his name was not "Matt Barnes."  When Candee gave that name rather than his own, Maldonado had facts within his knowledge sufficient to believe that Candee had committed the offense of providing false information to a law enforcement officer.  Maldonado relayed the information he knew to Yoder and requested his assistance with the arrest.  Because Maldonado's knowledge was sufficient to provide the probable cause necessary to support the arrest, Candee's claim for false arrest against Maldonado fails.

Candee's false arrest claim against Yoder fails for two reasons.  First, while Yoder may not have known that Candee had given a false name, under the collective knowledge doctrine, an officer assisting with an arrest "need not have personal knowledge of the evidence that gave rise to . . . probable cause, so long as he is acting at the request of those who have the necessary information."  *United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017) (citing *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)).  "[T]he collective knowledge theory applies so long as there is 'some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts."  *Id.* (quoting *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)).  To the extent that Yoder assisted in Candee's arrest for providing a false name to law enforcement, he had the requisite probable cause under the collective knowledge doctrine.  Second, Yoder personally saw Candee resisting, hitting, and kicking Maldonado, which provided Yoder with probable cause to arrest Candee for assault on a peace officer.  Either set of facts

provided Yoder with probable cause to arrest Candee, thus precluding Candee's claim against him for false arrest.

Candee has filed several responses to the officers' motion for summary judgment, but he points to no evidence sufficient to create a genuine dispute of fact on this claim. Instead, Candee simply repeats the same conclusory allegations found in his complaint and amended complaint. He also alleges what he believes "his witnesses" would say, but he includes no statements or other evidence supporting his allegations. Candee's conclusory and unsupported allegations are not competent summary judgment evidence and so are insufficient to defeat the motion for summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam). Candee has therefore failed to carry his burden to point to evidence raising a genuine factual dispute material to determining whether either officer violated his constitutional rights by falsely arresting him, and Maldonado and Yoder are entitled to summary judgment in their favor on this claim.

### C.     Qualified Immunity

When, as in this case, the plaintiff fails to show that the defendant has violated a constitutional right, the court need not address the defense of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, for the sake of completeness, the court will explain why the record supports the defense of qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). In determining whether an officer violated a clearly established right, the court considers the evidence in the light of what the officer knew at the time he acted, not on facts discovered subsequently. *Graham,* 490 U.S. at 396; *see also Lytle v. Bexar*

*County,* 560 F.3d 404. 411 (5th Cir. 2009).  In determining whether a right is clearly established, the court asks whether the existence of the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (cleaned up).  In short, the court "must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'"  *Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).  Under these rules, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

When a government official moves for summary judgment on the basis of qualified immunity, "'the burden . . . shifts to the plaintiff, who must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law.'"  *Dyer*, 964 F.3d at 380 (alteration in original) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  "[C]onclusory allegations are not competent summary judgment evidence, and such allegations are insufficient . . . to defeat a motion for summary judgment."  *Eason*, 73 F.3d at 1325 (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)).  Instead, the nonmoving party must identify specific evidence in the record and explain how that evidence supports that party's claim.  *See Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014).

### 1.      Excessive Force Claims

A defendant is entitled to qualified immunity against an excessive force claim if a reasonable officer in the defendant's position could have believed, in light of the totality of the facts and circumstances, that the level of force used was reasonable.  The Fifth Circuit has held that "a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is *not* resisting arrest." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 732 (5th Cir. 2018) (emphasis added).  But when a detainee is actively resisting arrest and that resistance continues even after he has been wrestled to the ground, the use of strikes and chokeholds may be reasonable.  *See, e.g., Gassner v. City of Garland, Tex.*, 864 F.2d 394, 400 (5th Cir. 1989), *abrogated on other grounds by Devenpeck v. Alford*, 543 U.S. 146 (2004).  Candee's continued resistance, even after he was wrestled to the ground by two officers, could lead a reasonable officer to conclude that the level of force used was reasonable.  The officers are therefore entitled to qualified immunity unless Candee can point to evidence sufficient to rebut the defense.

But Candee has not done so.  Candee does not identify any evidence in the record that supports his claim.  Instead, he relies only on the conclusory allegations contained in his complaint and amended complaint and his own assertions about what his witnesses might say if called at trial.  These allegations and unsubstantiated assertions about witness testimony are not sufficient to avoid summary judgment on the issue of qualified immunity.  *See, e.g., Boudreaux,* 402 F.3d at 540 (holding that a plaintiff's burden when faced with a qualified immunity defense "will not be satisfied by . . . 'conclusory allegations, [or] unsubstantiated assertions'" (quoting *Little,* 37 F.3d at 1075)).  Because Candee has failed to carry his burden, Maldonado and Yoder are entitled to summary judgment in their favor on their qualified immunity defense to this claim.

2.      **False Arrest Claims**

A defendant is entitled to qualified immunity against a false arrest claim if a reasonable officer in the defendant's position could have believed, in light of the totality of the facts and circumstances, that there was a fair probability that the plaintiff had committed or was committing an offense. *See Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004); *United States v. Watson,* 273 F.3d 599, 602 (5th Cir. 2001). "Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable"). In short, "there must not even arguably be probable cause for the . . . arrest for immunity to be lost." *Brown,* 243 F.3d at 190 (citation omitted).

The record shows that Maldonado reasonably believed that Candee had provided a false name during his detention. This fact, standing alone, entitles the officers to summary judgment in their favor on the issue of qualified immunity from the false arrest claim. But even if Maldonado had been mistaken, his reasonable but mistaken belief was sufficient to entitle him to qualified immunity. Yoder is entitled to qualified immunity under the collective knowledge doctrine. *See, e.g., Defrates v. Podany*, 789 F. App'x 427, 432 (5th Cir. 2019). Candee has pointed to no record evidence sufficient to raise a genuine dispute of fact material to the issue of whether his arrest was reasonable. The officers are entitled to summary judgment in this favor on the defense of qualified immunity.

### D.   False Imprisonment Claims

Candee also brings claims for false imprisonment against Maldonado and Yoder, alleging that they lied under oath about what happened, resulting in his imprisonment on false charges. When a criminal defendant brings an action under § 1983 that challenges the legitimacy of his detention, the court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the charges and potential conviction.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  If so, the claim is barred unless the plaintiff proves that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make that determination, or called into question by a federal court's issuance of habeas corpus."  *Id*. at 487.  When a pending civil rights action may have implications in a pending criminal case, the proper procedure is for the court to stay the civil rights action until the criminal case is ended.  *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed absent some other bar to suit." *Id*. at 394 (citations omitted).

In this case, Candee's allegation that he is being imprisoned on false charges based on lies allegedly told by the officers challenges the validity of his pending state criminal charges and any ensuing convictions.  Because resolution of his false imprisonment claim may have implications in his pending criminal prosecution, the court must stay any action on this claim until Candee's pending criminal case has been resolved.

## IV.   Conclusion and Order

The defendants' motion to dismiss, or alternatively, motion for summary judgment, (Docket Entry No. 27), is granted and this action is **dismissed with prejudice** as to all claims

against Maldonado and Yoder except the claim for false imprisonment.  Candee's claim for false imprisonment is **dismissed without prejudice**.  Candee may move to reinstate this action as to the false imprisonment claim after his state charges are finally resolved, including any appeals.  Final judgment will be separately entered.   All pending motions, including Candee's motion for production of documents, (Docket Entry No. 38), are **denied as moot**.

SIGNED on June 28, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge